IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EULA B. TYLER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 04 C 0718 |
| | ) | |
| v. | ) | |
| | ) | |
| BANK ONE CORPORATION and | ) | |
| BANK ONE CORPORATION | ) | |
| PERSONAL PENSION ACCOUNT PLAN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Eula B. Tyler filed a suit against Defendants Bank One Corporation ("Bank One") and Bank One Corporation Personal Pension Account Plan (the "Plan") pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1132(a)(1)(B). Plaintiff seeks to recover additional benefits allegedly due to her under the Plan. Defendants have filed a motion for summary judgment on the claims that Plaintiff has brought on her own behalf and on behalf of the certified class. For the reasons that follow, the Court grants Defendants' motion.

### BACKGROUND

**I.    The Parties**

Plaintiff is a former employee of Bank One. (R. 78-1; Defs.' Rule 56.1 Stmt. of Mat. Facts ("Defs.' SMF") at ¶ 3.) Bank One, a Delaware Corporation with its headquarters in Chicago, was a bank holding company. (*Id*. at ¶ 4.) The Plan is an employee pension benefit plan within the meaning of 29 U.S.C §1002(2). (*Id*. at ¶ 5.)

## II. Plaintiff's Employment with Bank One and Predecessors to Bank One

In 1971, Plaintiff began working at NBD Bancorp, Inc. ("NBD"). (*Id.* at ¶ 9.) While an employee at NBD, she participated in the NBD Bancorp, Inc., Retirement Plan (the "NBD Plan"). (*Id.* at ¶ 10.) In 1995 or 1996, NBD merged with First Chicago Corporation ("First Chicago NBD Corporation"), and the NBD Plan merged with the First Chicago Corporation Pension Plan to become the First Chicago NBD Corporation Personal Pension Account Plan (the "First Chicago NBD Plan"). (R.84-1; Pl.'s Resp. to Defs.' SMF and Stmt. of Add'l Mat. Facts ("Pl.'s SMF") at ¶ 11.) Plaintiff was a participant in the First Chicago NBD Plan. (R. 78-1; Defs.' SMF at ¶ 12.) In 1998, the First Chicago NBD Corporation merged with Banc One Corporation to become Bank One, and the First Chicago NBD Plan merged into the Banc One Corporation Cash Balance Pension Plan to become the Plan. (*Id.* at ¶ 13.) Plaintiff participated in the Plan until her employment terminated on November 30, 2001. (*Id.* at ¶ 17.) Plaintiff was forty-nine years old when she left Bank One, and had accrued over thirty years of service. (R. 84-1; Pl.'s SMF at ¶ 44.)

## III. The Plan

The Plan contains, among other things, a "grandfathered" provision that provides certain former NBD employees with the greater of the benefits provided under §5 of the Plan or Supplement B. (R. 78-1; Defs.' SMF at ¶ 14, Ex. 1 at §5.3, T000082-83.) Supplement B describes the benefits that would have been available to former NBD employees had the NBD Plan still been in existence. (*Id.* at ¶ 15, T000131.) The parties agree that Plaintiff was entitled to the benefits set forth in Supplement B because those benefits were greater than the benefits provided under §5 of the Plan. (*Id.* at ¶ 19); (R. 84-1; Pl.'s SMF at ¶ 19.)

Plaintiff chose to take her benefits under the Plan in a lump sum, rather than an annuity. (R. 78-1; Defs.' SMF at ¶ 18.) Section 1.7 of Supplement B defines the "Lump Sum Value of the NBD Benefit" as:

> equal to the greater of (a) or (b) below, plus (c) and (d).
>
> (a) The actuarial present value of the Gross Retirement Allowance (as defined in Section 2, below) unreduced for Early Retirement, if applicable, minus the Offset Allowance (as defined in Section 2, below) reduced in accordance with Supplement C for retirements prior to the Social Security Normal Retirement Ages payable as a deferred life annuity to commence when the Member reaches age 60 or an immediate annuity when the Member is age 60 or older.
>
> (b) The actuarial present value of the Minimum Benefit (as defined in Section 2, below) unreduced for Early Retirement, if applicable, payable as a deferred life annuity to commence when the Member reaches age 60 or an immediate annuity when the Member is age 60 or older.
>
> (c) If the Member is under age 62 on his date of retirement, the actuarial present value of the Offset Allowance reduced in accordance with Supplement C and payable as a temporary life annuity to age 62, otherwise zero.
>
> (d) The actuarial present value of the Contributory Retirement Allowance unreduced for Early Retirement, if applicable, payable as a deferred life annuity to commence when the Member reaches age 60 or an immediate annuity when the Member is age 60 or older.

(*Id*. at Ex. 1, §1.7, T000133.) Supplement B does not define the terms "retirement" or "date of retirement," as used in §1.7(c). (R. 84-1; Pl.'s SMF at ¶ 48.)

Section 2 of Supplement B, titled "Retirement and Termination Benefits," does not contain any provisions regarding the calculation of lump sum benefits. Instead, it addresses the calculation of annuities for three classes of employees: (1) Section 2.1 ("Normal Retirement Allowance") sets forth the way in which to calculate the annuities to which certain Plan participants are entitled who retire on or after the "Normal Retirement Date," which the Plan defines as "the later of the date a Participant attains age 65 or the fifth anniversary of the

Participant's commencement of Plan participation," (R. 78-1; Defs.' SMF at Ex. 1, §2.32(a), T000074); (2) Section 2.2 ("Early Retirement Allowance") sets forth the way in which to calculate the annuities to which certain Plan participants are entitled who "retire from service" when they have "attained age 55;" and (3) Section 2.3 ("Deferred Vested Retirement Allowance") sets forth the way in which to calculate the annuities to which certain Plan participants are entitled "who [have] not attained age 55, but who [have] completed five years of Vesting Service, and whose employment with an Employer is terminated."[1] (R. 78-1; Defs.' SMF at Ex. 1, §2, T000134-37.)

IV.    **Plaintiff's Claim and Adverse Benefits Determinations**

In or around 2003, Plaintiff contacted the National Center for Retirement Benefits ("NCRB"). (*Id*. at ¶ 20.) The NCRB, on Plaintiff's behalf, submitted a claim to Bank One asserting that Plaintiff was entitled to, but did not receive, an additional benefit under §1.7(c) of Supplement B. (*Id*. at ¶ 22.) In a letter dated November 13, 2003, the Bank One Corporation Retirement Committee (the "Committee") denied Plaintiff's claim. (*Id*. at Ex. 3, T000002.) The Committee found that "Ms. Tyler was under age 55 and, as such, did not retire from the plan. Her benefits were governed under Section 2.3, Deferred Vested Retirement Allowance." (*Id*. at Ex. 3, T000003.) Plaintiff, through the NCRB, then filed an appeal. (*Id*. at ¶ 24.) The Committee delegated the authority to hear Plaintiff's appeal to Donald Hoy, the Secretary of the Committee. (*Id*. at ¶¶ 25, 26.) In a letter dated January 6, 2004, Hoy denied Plaintiff's appeal on behalf of the Committee on the basis that "Ms. Tyler is not entitled to a benefit under Section

---

[1] The Court will address other provisions of the Plan below as they are relevant to its analysis.

1.7(c) because she terminated employment prior to attaining age 55 and therefore did not 'retire' under the Plan's normal or early retirement definitions." (*Id*. at Ex. 5, T000012.) Hoy further stated that "the Plan requires that Ms. Tyler's benefit be calculated under Section 2.3 of Supplement B . . . [t]he amount payable under Section 2.3 is described with reference to Section 2.1 of the Supplement, and neither section provides for the inclusion of the Offset Allowance in the calculation." (*Id*.)

On January 29, 2004, Plaintiff filed a class action complaint. Plaintiff filed an amended class action complaint ("Complaint") on May 28, 2004 seeking damages "for the difference between the lump sum benefit [Defendants] paid Plaintiff and the members of the Class and the lump sum benefit they should have paid under Section 1.7 of the NBD Plan Benefits Offset plus a reasonable rate of interest on that amount from the time it should have been paid." (R. 11-1; Compl. at 9.) On August 1, 2005, the Court entered an agreed order certifying a class of "[a]ll participants in the Bank One Corporation Personal Pension Account Plan who were vested participants in the NBD Bancorp, Inc., Retirement Plan and who ceased employment with Bank One before age 55 and received a lump sum benefit." (R. 62-1; Agreed Mot. for Class Certification at 1.)

## ANALYSIS

**I.  Legal Standard**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining whether a genuine issue of material fact exists, the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Id.* at 255, 106 S. Ct. at 2513. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed.2d 265 (1986). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004).

In ERISA cases such as this one, "the scope of the district court's . . . review is governed by the rule that a denial of benefits is reviewed de novo unless the plan gives the plan administrator discretion to construe policy terms." *See Hess v. Reg-Ellen Machine Tool Corp.*, 423 F.3d 653, 658 (7th Cir. 2005) (citing *Ruttenberg v. United States Life Ins. Co.*, 413 F.3d 652, 659 (7th Cir. 2005)). When the plan provides the plan administrator with discretion to interpret the plan, courts "review the administrator's decision under the deferential arbitrary and capricious standard." *Id*. (citations omitted). "Under this 'least demanding form of judicial review,' *Olander v. Bucyrus-Erie Co.*, 187 F.3d 599, 607 (7th Cir. 1999), [a court] will not set aside a denial of benefits based on any reasonable interpretation of the plan, *Mers v. Marriott Int'l Group Accidental Death and Dismemberment Plan*, 144 F.3d 1014, 1021 (7th Cir. 1998). Indeed, whether or not [a court] would have reached the same conclusion is irrelevant; [a court] will overturn the fiduciary's denial of benefits only if it is 'completely unreasonable.'" *Id*.

(citations and quotations omitted). The arbitrary and capricious standard requires that the plan administrator provide "specific reasons" for the denial of benefits, not the reasoning underlying his reasons. *Gallo v. Amoco Corp.*, 102 F.3d 918, 922 (7th Cir. 1996) (citations and internal quotations omitted). In court, the plan administrator may defend his interpretation of the plan "with any arguments that bear upon its rationality" even if he did not previously provide those arguments to the applicant. *Id*. at 923.

## II. Defendants' Discretion

As stated above, the scope of the Court's review of a denial of benefits is *de novo* if the Plan does not provide the plan administrator with discretion. If the Plan does provide the plan administrator with discretion, however, the Court will apply the deferential arbitrary and capricious standard. In *Herzberger v. Standard Ins. Co.*, 205 F.3d 327 (7th Cir. 2000), the Seventh Circuit set forth the following "safe harbor" that automatically provides the administrator with discretion: "[b]enefits under this plan will be paid only if the plan administrator decides in his discretion that the applicant is entitled to them." 205 F.3d at 331. Plans, however, need not contain the Seventh Circuit's proposed "safe harbor" or any "magic words" to confer discretion. *Id*. A plan need only "indicate[] with the requisite if minimum clarity that a discretionary determination is envisaged." *Id*.

In this case, the Committee is the administrator of the Plan. (R. 78-1; Defs.' SMF, Ex. 1 at §2.10, T000070) (defining "Committee" as "the Retirement Committee of the Corporation which is appointed pursuant to Section 10 to administer the plan.") The Plan states that

> [t]he Committee shall have the responsibility, and the full power and authority . . . [t]o determine, in its sole discretion, all questions concerning the construction and interpretation of the Plan and its administration, including, but not by way of limitation, the determination of the rights or eligibility under the Plan of employees, Participants,

7

and Beneficiaries, and the amount of their respective benefits, and to interpret and remedy, if necessary, ambiguities, inconsistencies, or omissions, and to make factual findings, and any such determinations or interpretations of the Committee shall be final, conclusive and binding on all parties affected thereby.

(*Id.* at Ex. 1, §10.4(a), T000101.) This language indicates that "discretionary determination is envisaged" with the requisite clarity. *See Herzberger*, 205 F.3d at 331. Accordingly, the Court will apply the arbitrary and capricious standard of review.[2]

## III. The Committee's Determination that Plaintiff Was Not Entitled to a Benefit under §1.7(c) Was Not Arbitrary and Capricious

The Committee denied Plaintiff's claim seeking additional benefits under §1.7(c) of Supplement B because it found that: (1) Plaintiff terminated her employment with Bank One prior to reaching the age of fifty-five, and as such, Plaintiff did not "retire" from the Plan; and (2) §2.3 governed the calculation of her benefits. Defendants provide the Court with a number of arguments in support of the Committee's conclusion.[3] For the reasons that follow, the

---

[2] Plaintiff does not contest that the Plan provides the Committee with discretion. Instead, she argues that "there has been no interpretation of the Plan by the Retirement Committee for the Court to defer to" because Donald Hoy, the Secretary of the Committee, testified that he did not find the Plan ambiguous. (R. 83-1; Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 6.) Plaintiff relies on a footnote in *Denzler v. Questech, Inc.*, 80 F.3d 97 (4th Cir. 1996). In *Denzler*, the Fourth Circuit explained that "[t]he question of whether a contract is ambiguous is one of law, which we review *de novo*." 80 F.3d at 101. The Fourth Circuit then held that the benefit plan was unambiguous and contrary to the plan administrator's interpretation of the plan. Here, the Court does not find that the Plan is unambiguous. Indeed, the Court has previously stated that "it is unclear whether §1.7 applies to the calculation of Plaintiff' lump sum payment." (R. 25-1; 10/18/2004 Order.) Moreover, as explained below, the Committee's interpretation of the Plan is not contrary to the terms of the Plan. *Denzler*, therefore, is distinguishable. Moreover, even if applicable, it is not binding on the Court.

[3] Plaintiff argues that the Committee's denial of benefits was arbitrary and capricious because of the purported "lack of consistency in Defendants' explanation for their actions throughout this litigation." (R. 83-1; Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 7.) Plaintiff relies on *Hess* for the proposition that the Seventh Circuit has recognized "evidence of inconsistent interpretations as a factor to be considered in determining whether a plan

8

Committee's determination that §1.7(c) did not provide Plaintiff with an additional benefit was not arbitrary and capricious.

### A. Plaintiff Did Not "Retire" under the Plan

The Committee, in denying Plaintiff's claim, explained that Plaintiff was not entitled to additional benefits under §1.7(c) because she terminated her employment with Bank One before she reached the age of fifty-five, and as such, she did not "retire" from the Plan. Section 1.7(c) refers to certain Plan participants who are under the age of sixty-two on their "date of retirement." (R. 78-1; Defs.' SMF at Ex. 1, §1.7, T000133.) Defendants argue that Plaintiff did not have a "date of retirement" because none of the retirement dates the Plan defines apply to her.[4] The Plan defines the "Normal Retirement Date" as the "first day of the calendar month next following the later of the date a participant attains age 65 or the fifth anniversary of the

---

administrator's decision is arbitrary and capricious." 423 F.3d at 663. Defendants' different arguments in defense of the Committee's determination, however, are not inconsistent. Plaintiff's only example of an alleged inconsistency in Defendants' arguments is that Defendants now state that "Section 1.7(c) only applies to Plan participants who are ages 60 or 61," even though Hoy's October 31, 2003 letter "clearly states that Section 1.7(c) is applicable to participants between the ages of 55 and 62." (R. 83-1; Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 8) (emphasis in original omitted.) This example does not establish the existence of any purported inconsistency. As an initial matter, Bonnie Mudd, a consultant from Towers Perrin, wrote the October 31, 2003 letter to which Plaintiff refers. The Retirement Committee attached this letter to its November 13, 2003 letter denying Plaintiff's claim. Nowhere in this letter does Mudd state that §1.7(c) applies to Plan participants between the ages of 55 and 62. Nor does Hoy make that statement in his January 6, 2004 letter. Further, Defendants' argument that §1.7(c) only applies to certain Plan participants who are between the ages of sixty and sixty-one does not bear on the reasonableness of the Committee's determination to deny Plaintiff additional benefits under §1.7(c). The Court also declines to address Defendants' arguments regarding pension benefit plans other than the Plan and Supplement B thereto because such plans are not at issue here.

[4] Defendants further argue that Plaintiff did not "retire" because when she left her employment at Bank One, she found other employment. The Court, however, does not find this argument persuasive, nor is there any support in the Plan for it.

9

Participant's commencement of Plan participation." (*Id*. at Ex. 1, §2.32(a), T000074.) Accordingly, a Plan participant cannot reach the Normal Retirement Date before the age of sixty-five. The Plan also defines the "Disability Retirement Date" as the "first day of the calendar month next following the date a Participant retires from his Employer by reason of a Disability after he (i) has completed five years of Vesting Service, and (ii) has attained age 55." (*Id*. at Ex. 1, §2.32(b), T000074.) Additionally, Supplement B defines the "Early Retirement Date," which applies to certain Plan participants who have "attained age 55 with at least 5 years of Vesting Service." (*Id*. at Ex. 1, §2.2(a), T000135.) Because Plaintiff left Bank One at the age of forty-nine, she did not terminate her employment on the Normal Retirement Date, the Disability Retirement Date or the Early Retirement Date.

In further support of the Committee's determination that Plaintiff did not "retire" in accordance with the Plan, Defendants contend that Supplement B distinguishes retirement from termination of employment. Supplement B supports Defendants' argument. The first paragraph states that it "describes the benefit that would have been payable to such Participants if the terms of the NBD Plan, as modified, had continued in existence through their *Retirement Date or other termination of employment*." (*Id*. at Ex. 1, T000131) (emphasis added.) Additionally, §2 of Supplement B, titled "Retirement and Termination Benefits," distinguishes between retirement and termination of employment. (*Id*. at Ex. 1, T000134-37.) Section 2.1, which applies to certain Plan participants that are age sixty-five or older, states that "[a] Member *may retire from service* on a Normal Retirement Allowance upon reaching his Normal Retirement Date." (*Id*. Ex. 1, §2.1(a), T000134) (emphasis added.) Section 2.2 provides that "[a] Member who has not reached his Normal Retirement Date, but who has attained age 55 with at least 5 years of Vesting

10

Service *may retire from service* and may receive an Early Retirement Allowance." (*Id*. at Ex. 1, §2.2(a), T000135) (emphasis added.) Section 2.3 applies to a Plan participant "who has not attained age 55, but who has completed five years of Vesting Service, and whose employment with an Employer is *terminated*." (*Id*. at Ex. 1, §2.3, T000136) (emphasis added.) Sections 2.1 and 2.2, which refer to certain Plan participants who leave Bank One at the age of fifty-five or older, both refer to retiring and use the language "may retire from service." In contrast, §2.3 – the only provision in §2 that applies to participants who leave Bank One prior to reaching the age of fifty-five – refers to termination of employment and omits the language "may retire from service." These provisions of the Plan and Supplement B support the Committee's distinction between a retirement date and a termination date, and therefore its determination that Plaintiff did not "retire" from the Plan because she terminated her employment prior to reaching the age of fifty-five. At a minimum, this support establishes that the Committee's decision was not arbitrary and capricious or completely unreasonable.

Plaintiff asks the Court to interpret the phrase "date of retirement" in accordance with the ordinary, dictionary definition because the Plan does not specifically define "retire" or "date of retirement." Plaintiff proposes the following definition of the word retire: "to withdraw from one's position or occupation." (R. 83-1; Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 14) (citing Webster's New Collegiate Dictionary 1007 (9th ed. 1984).) Plaintiff argues that her interpretation of the word "retire" is consistent with §2.3 because §2.3 refers to a "Deferred Vested *Retirement* Allowance." (R. 78-1; Defs.' SMF at Ex. 1, §2.3, T000136) (emphasis added.) As an initial matter, Plaintiff does not cite any applicable authority for her assertion that

11

the Court must look outside the Plan to the dictionary definition of "retire" to find its meaning.[5]

Furthermore, Plaintiff's argument simply provides the Court with an alternative interpretation of the phrase "date of retirement." The existence of an interpretation of an ERISA plan that differs from the interpretation of the plan administrator, however, does not establish that the plan administrator's interpretation was completely unreasonable. *See Gallo*, 102 F.3d at 921 (The senior plan administrator's "interpretation of the plan may be right or wrong; it was not unreasonable.").

**B.     Section 2.3**

The Committee, in denying Plaintiff's claim, also stated that §2.3 governed the calculation of her benefits. Section 2.3 sets forth the calculation of an annuity for certain Plan participants who have not reached the age of fifty-five, but have completed five years of Vesting Service. (R. 78-1; Defs.' SMF at Ex. 1, §2.3, T000136-37.) Plaintiff agrees that §2.3 describes her benefit. (R. 83-1; Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 14.) Moreover, even though §2.3 does not address the calculation of a lump sum and Plaintiff elected to receive her benefits in that form, it was not completely unreasonable for the Committee to look to §2.3 when it calculated Plaintiff's benefit. As the Court previously explained, "the Bank One Plan does not provide a method for calculating any lump sum payment that a participant is eligible for," and "it is unclear whether §1.7 applies to the calculation of Plaintiff's lump sum payment." (R. 25-1;

---

[5] *Whalin v. Sears Roebuck & Co.*, No. 94-1518, 1995 WL 68823, at *3 (N.D. Ill. Feb. 16, 1995), the only case to which Plaintiff cites in support of her dictionary definition argument, does not hold that courts must apply the ordinary, dictionary definition of contract terms that the contract does not specifically define. In *Whalin*, the plaintiff's interpretation of a contract ignored the word "applicable," and the court used the dictionary definition of the word because, at it explained, it was required to give meaning to the word.

10/18/2004 Order.) Given this uncertainty, the Committee's decision to look to §2.3 was not arbitrary and capricious.

### C. The Factors Set Forth in Supplement C Do Not Apply to Plaintiff

Defendants also argue that it is technically impossible to apply §1.7(c) to Plaintiff because her employment terminated before she reached the age of fifty-five. Section 1.7(c) defines one component of the "Lump Sum Value of the NBD Benefit" as "the actuarial present value of the Offset Allowance *reduced in accordance with Supplement C*." (R. 78-1; Defs.' SMF at Ex. 1, §1.7, T000133) (emphasis added.) Supplement C provides the factors for determining the amount of the Offset Allowance under Supplement B. Specifically, Supplement C provides factors for twelve years prior to the Social Security Normal Retirement Date ("SSNRD"). Defendants contend that Plaintiff left Bank One seventeen years before her SSNRD, and as such, it is impossible to calculate an Offset Allowance for Plaintiff under §1.7(c). Plaintiff concedes that Schedule C only contains reduction factors for twelve years prior to the SSNRD, and does not contain reduction factors applicable to her. She argues that "all this means is that there is no reduction in Plaintiff's Offset Allowance." (R. 83-1; Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 15.) Plaintiff's interpretation, however, renders the phrase "reduced in accordance with Supplement C" in §1.7(c) meaningless as applied to her. Moreover, the fact that the Committee could not have reduced the Offset Allowance in accordance with Supplement C, as §1.7(c) requires when calculating Plaintiff's benefit, provides support for its determination that §1.7(c) does not apply to Plaintiff.

### D. The Committee's Interpretation of §1.7(c) Renders §1.7 Consistent with §2

Furthermore, the Committee's interpretation of §1.7(c), as not providing an additional

13

benefit to Plaintiff because she did not reach the age of fifty-five, is consistent with the calculation of annuities under §2.[6] Section 1.7(a), which may be included in a lump sum benefit calculation, subtracts the Offset Allowance from the actuarial present value of the Gross Retirement Allowance.[7] Section 1.7(c) provides a Plan participant who is "under age 62 on his date of retirement" with the "actuarial present value of the Offset Allowance reduced in accordance with Supplement C and payable as a temporary life annuity to age 62." (R. 78-1; Defs.' SMF at Ex. 1, §1.7(c), T000133.) Accordingly, §1.7(c) negates the §1.7(a) Offset Allowance deduction until the Plan participant reaches the age of sixty-two. Similarly, §2.2, which provides an annuity for certain Plan participants who reach the age of fifty-five prior to retiring, does not deduct the Offset Allowance from the annual benefit until the Plan participant reaches the age of sixty-two. (*Id.* at Ex. 1, §2.2(b), T000136) ("The Early Retirement Allowance . . . shall be equal to his Gross Early Retirement Allowance minus, for any month beginning on or after the attainment of age 62, his Offset Allowance . . . .") Section 2.3, however, which provides an annuity for certain Plan participants who do not reach the age of fifty-five prior to terminating their employment, does not contain a similar provision postponing the deduction of the Offset Allowance until the age of sixty-two. Therefore, if §1.7(c) does not apply to Plan participants under the age of fifty-five, then those participants would not be entitled to a deferral

---

[6] Plaintiff asserts that Defendants' argument regarding consistency between the calculation of annuities and lump sums implicates the intentions of the Plan's drafters. Defendants, however, make no explicit arguments regarding the drafters' intent, and there is no evidence of their intent before the Court. Accordingly, the Court does not address this issue.

[7] Section 1.7 states that the Lump Sum Value of the NBD Benefit "is equal to the greater of (a) or (b) below, plus (c) and (d)." (*Id.* at Ex. 1, §1.7, T000133.) The parties do not address whether Plaintiff's benefits would be greater under §1.7(a) or §1.7(b). Defendants assume the applicability of §1.7(a).

14

of the deduction of the Offset Allowance until the age of sixty-two regardless of whether they elect to receive their benefits in the form of a lump sum or in the form of an annuity.[8] The fact that the Committee's interpretation of §1.7(c) renders the calculation of an annuity consistent with the calculation of a lump sum, lends further support for the Committee's determination and shows that the determination was not completely unreasonable.

## CONCLUSION

For these reasons, the Court grants Defendants' motion for summary judgment.


Dated: February 22, 2006                    ENTERED:

                                            _____
                                            AMY J. STUEVE
                                            United States District Court Judge

---

[8] This analysis relies on the applicability of §1.7(a).